# COURT OF APPEALS.

JOHN A. STEVENS and others, Trustees, Respondents, agt. STEPHEN V. R. WATSON, impleaded with the BUFFALO, CORNING AND NEW YORK RAILROAD COMPANY and others, Appellants.

In 1852 the defendants, The Buffalo, Corning and New York Railroad Company, gave a mortgage to the plaintiffs, as trustees, to secure an issue of bonds to the amount of $1,000,000 upon all the company's " railroad, as well as that part now constructed as the part thereof which shall be hereafter constructed, together with the right of way of said road, lands, rails, bridges, erections, structures, fixtures and appurtenances thereunto belonging, and all the franchises and rights now owned by or belonging to the corporation, or that may be owned by them and belong to them hereafter, together with all the locomotives, tenders, cars, carriages, tools and machinery now owned or hereafter to be owned by said corporation, or in any way belonging or appertaining to said road and used thereon."

The mortgage also contained a covenant, on the part of the mortgagors, for further assurance.

In 1853 a second mortgage, similar in its terms to the plaintiffs' mortgage, was executed by the company to Daniel S. Miller and Miles S. Sampson, trustees, to secure a further issue of bonds by the company to the amount of $600,000. The mortgage was declared, in terms, to be subject to the plaintiffs' mortgage. Afterwards, in 1853, the company executed to the second mortgagors as a further security a chattel mortgage, describing particularly the personal property. This chattel mortgage was also declared to be subject to the plaintiffs' mortgage.

The second mortgage was given after the greater part of the property, real and personal, had been acquired by the company after the first mortgage was given, as well as that which was included in the first mortgage.

The defendant, Watson, was a holder of some of the bonds secured by the second mortgage, and also a judgment creditor of the company for $5,442.61, which was a lien on all the property of the company.

*Held*, on a foreclosure of the first mortgage by the plaintiffs, that it was a valid lien upon all the property of the mortgagors (the railroad company)

embraced within the terms of the mortgage, whether owned by the company at its date, or whether subsequently acquired.

In equity the mortgage of the subsequently acquired property is valid, and may be enforced against the mortgagors and all other persons, except purchasers for value and without notice.

The covenant for further assurance contained in the plaintiffs' mortgage operates as an equitable lien upon the after-acquired property.

The trustees in the second mortgage and Watson were not *bona fide* purchasers nor entitled to preference. These trustees took their mortgages expressly subject to the plaintiffs' mortgage, and Watson, at most, had but a general lien by judgment on the equity of redemption.

A specific equitable lien upon land is entitled to a preference over a subsequent legal lien by judgment.

A mortgage made by a corporation as the borrower, the statutes of usury have no application to it.

If there is no statute limiting the rate of interest upon loans to corporations, illegality or taint of usury cannot be imputed to their contracts as borrowers.

*June Term*, 1865.

THIS was an action to foreclose a mortgage given by the railroad company in April, 1852, to the plaintiffs, as trustees, to secure an issue of bonds to the amount of $1,000,000. The mortgage was upon all the company's " railroad, as well as that part now constructed as the part thereof which shall be hereafter constructed, together with the right of way of said road, lands, rails, bridges, erections, structures, fixtures and appurtenances thereunto belonging, and all the franchises and rights now owned by or belonging to the corporation, or that may be owned by them and belong to them hereafter, together with all the locomotives, tenders, cars, carriages, tools and machinery now owned or hereafter to be owned by said corporation, or in any way belonging or appertaining to said road and used thereon."

The mortgage also contained a covenant, on the part of the mortgagors, for further assurance.

In May or June, 1853, a second mortgage, similar in its terms to the plaintiff's mortgage, was executed by the company to Daniel S. Miller and Miles S. Sampson, trustees, to secure a further issue of bonds by the company to the amount

of $600,000. These trustees were made defendants. The mortgage was declared, in terms, to be subject to the plaintiffs' mortgage. The company afterward, on the 16th of November, 1853, executed to the trustees named in the second mortgage, as a further security for the payment of the last-mentioned bonds, a chattel mortgage, describing particularly the personal property. This chattel mortgage was also declared to be subject to the plaintiffs' mortgage.

At the time the plaintiffs' mortgage was executed the company had not acquired title to the whole of the lands on which the road was located. It afterward acquired title to land, upon which it erected machine shops and other buildings for the use of the corporation, and particularly the company received a grant of land at Corning, about two and a half miles from the eastern terminus of its road, at its intersection with the New York and Erie railroad, upon which it had erected a machine shop and depot, and to which it had access over a track laid down by it on the land of the New York and Erie Railroad Company to the Corning depot, and from thence over the Erie road, and a side track to the machine shop. The company also purchased, after the first mortgage was given, several locomotives and passenger and freight cars and other personal property for operating its road. The second mortgage was given after the greater part of the real and personal property mentioned had been acquired by the company.

The defendant, Watson, was a holder of some of the bonds secured by the second mortgage, and also a judgment creditor of the company, having recovered a judgment against it of $5,442.61 in November, 1855, which judgment was docketed in the several counties traversed by the railroad, but no execution had been issued thereon. Being made a party to the foreclosure suit, as a judgment creditor of the company, he appeared and set up that the plaintiffs' mortgage created no lien upon real estate acquired by the mortgagors after its execution, nor upon any rolling stock, cars, tools and

machinery which the company did not own when it was executed; that his judgment is a lien upon such subsequently acquired lands, and that the second mortgage is also a lien upon all real estate and appurtenances, rolling stock, etc., acquired intermediate the date of the two mortgages, superior and prior to the first mortgage, and that the chattel mortgage to the trustees is a lien upon the property mentioned in it, and that the plaintiffs have no claim upon such chattel property under their mortgage. He also set up that some part of the bonds were sold and negotiated at less than par, and for that reason the mortgage was usurious.

The defendant, Watson, alone interposed the defense of usury. This defense the judge overruled at the trial and directed judgment of foreclosure, and that all the lands of the mortgagors, all their rights of way, all the track, rails, bridges, buildings, creations, fixtures, etc., all interests in lands acquired for the purposes of the company, all franchises, together with all the rolling stock, locomotives, cars, tenders, tools and machinery owned by the company, or in anywise belonging or appertaining to the road or used thereon be sold, and that the defendants (including the defendant Watson) be forever barred from all equity of redemption and claim of, in and to the mortgaged franchise, premises and property, etc.

In respect to the sale of the rolling stock and other personal property acquired after the plaintiffs' mortgage was executed, the decision and judgment declared that the sale should be subject to a levy of an execution upon Watson's judgment, which, at the time of the sale, might be issued and levied thereon.

From this judgment, which was affirmed at the general term of the supreme court, Watson appealed to this court.

E. L. FANCHER, *for plaintiffs.*

JOHN GANSON and GEO. F. COMSTOCK, *for defendant Watson.*

FRANCIS KERNAN, *for other defendants.*

WRIGHT, *J.*—I am of the opinion that the appeal is without merit. The plaintiffs' mortgage was a valid lien upon all the property of the mortgagors (the railroad company) embraced within the terms of the mortgage, whether owned by the company at its date or whether subsequently acquired. It is unnecessary to go the length of the proposition (though I think it might be successfully maintained) that the plaintiffs, as mortgagees of the franchises of the corporation, are entitled to the subsequently acquired property as an incident to the franchise mortgaged, and as an accession to the subject of the mortgage.

Be this as it may, in equity the mortgage of the subsequently acquired property is valid, and may be enforced against the mortgagors and all other persons, except purchasers for value and without notice.

The covenant for further assurance, contained in the plaintiffs' mortgage, operates as an equitable lien upon the after-acquired property.

The trustees in the second mortgage (Miller and Sampson) and Watson were not *bona fide* purchasers nor entitled to preference. These trustees took their mortgages expressly subject to the plaintiffs' mortgage, and Watson, at most, had but a general lien by judgment on the equity of redemption. It is clear, as to the mortgagors, that the plaintiffs' mortgage is a lien in equity on all the property owned at its date or afterward acquired, and the defendant Watson, whether he claimed as a bondholder under the second mortgage, or as a judgment creditor, can have no greater right, as against the plaintiff, than the railroad company (the mortgagors) have.

The trustees of the bondholders under the second mortgage, beside having notice of the prior mortgage, took their mortgages subject thereto, and a lien by judgment is always subordinate to a prior equitable lien, whether of record or not, or executed or not. The plaintiffs' mortgage was, in equity, a specific lien on the real estate of the company, and a specific equitable lien upon land is entitled to a preference

Stevens agt. Buffalo, Corning and New York Railroad Company.

over a subsequent legal lien by judgment. If, as is now asserted, the plaintiffs' mortgage never was a lien on the lands acquired by the company at Corning, for the erection of a machine shop and depot, the judgment appealed from could do him no harm. But I think the judge rightly decided that the plaintiffs' mortgage was a lien.

The legal presumption is that these lands were necessary for the use of the company, and were properly acquired ; and, if acquired for its use, they became annexed to the franchise and inseparable from it.

It was alleged, in the answer of the defendant Watson, and proved on the trial, that some of the bonds secured by the plaintiffs' mortgage were negotiated and sold by the company at less than par, and, for this reason, it is urged the mortgage is usurious and void. The objection is susceptible of various answers, but a conclusive one is that the mortgage, being made by a corporation as the borrower, the statutes of usury have no application to it.

In *Roosa* agt. *Butterfield and others*, decided at the present term of the court, it was held that the act of April 6th, 1850 (*Laws of* 1850, *chap.* 172), prohibiting corporations from interposing the defense of usury, has the effect to except from the operation of the statutes of usury contracts of corporations stipulating to pay interest.

This being the construction given to the act mentioned, the contract in this case is not impeachable for usury.

If there is no statute limiting the rate of interest upon loans to corporations, illegality or taint of usury cannot be imputed to their contracts as borrowers.

The judgment should be affirmed.

Note.—We received this opinion from Judge FANCHER, who was counsel in the case, stating that it had never been published, but touches some important questions of railroad law. It has so often been asked for, that I think it should be published in your reports.—REP.